UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GARY L. WENZEL,<br><br>       Plaintiff,<br><br>v.<br><br>OCONTO COUNTY JAIL,<br>BARB NELSON,<br>CAROL KOPP, and<br>MICHAEL R. JANSEN,<br><br>       Defendants. | Case No. 14-CV-1307-JPS<br><br><br><br>ORDER |

  In this action under 42 U.S.C. § 1983, Plaintiff Gary L. Wenzel, ("Wenzel") a state prisoner, claims the defendants violated his due process rights by acting with deliberate indifference to a serious medical need. Presently before the Court are three separate motions for summary judgment, including: (1) Defendant Barb Nelson's motion for summary judgment (Docket #43); (2) Defendants Carol Kopp's, Michael Jansen's, and Oconto County Jail's motion for summary judgment (Docket #37); and, (3) Wenzel's motion for summary judgment (Docket #51).[1] The motions are now fully briefed and ready for disposition. For the reasons detailed herein, both of the defendants' motions for summary judgment will be granted and this action will be dismissed in its entirety.

  Before turning to the factual background of the case, the Court must address various preliminary matters. On June 8, 2015, and June 26, 2015, Wenzel filed motions to amend the complaint (Docket #49, #63). The Court's

---

[1]Wenzel also filed a "second motion for summary judgment" (Docket #52), however, it appears to the Court that this was intended to be Wenzel's opposition. Either way, the Court will consider all of Wenzel's filings in addressing the motions presently before it.

initial scheduling order allowed for amended pleadings to be filed until January 20, 2015. (Docket #9 at 1).[2] Federal Rule of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Here, the defendants have not consented to an amended pleading, nor does the Court find that leave to amend is appropriate here. Wenzel filed both his motions after the defendants filed for summary judgment and had likely spent considerable time and money defending the case. As such, the Court will deny Wenzel's motions to amend the complaint. (Docket #49, #63).

Second, Wenzel filed several motions to add information to his case, including: (1) "Motion for Discovery Additional Information" (Docket #54), and (2) two separate motions to add new evidence to summary judgment (Docket #65, #66). The latter motions to add new evidence to summary judgment will be denied as untimely (Docket #65, #66), as Wenzel did not file them until well after the summary judgment briefing concluded. As to the "Motion for Discovery Additional Information" (Docket #54), the Court will deny the motion as moot because it appears to the Court that Wenzel only wishes to supplement his opposition to summary judgment and does not seek any actual discovery.

---

[2]The text of the Scheduling Order listed January 20, 2014, as the cutoff date, however, that was clearly a typographical error as that date had already passed prior to the filing of the original complaint. (*See* Docket #9 at 1).

1. FACTUAL BACKGROUND[3]

Wenzel was taken to Oconto County Jail on May 1, 2014, following a probation revocation related to a prior conviction. (Docket #39 at 7). He remained incarcerated there until August 22, 2014, when he was transferred to the Wisconsin State Prison System. (Docket #39 at 7).

Defendant Barb Nelson was, at all relevant times, a licensed practical nurse ("LPN") employed by Correctional Healthcare Companies ("CHC") to provide on-site health care services to inmates at Oconto County Jail. (Docket #46 at 2-3). Ms. Nelson provided health care services to Wenzel while he was housed at the Oconto County Jail. (Docket #46 at 3, Nelson Decl.).

Defendant Carol Kopp, at all relevant times, was employed by Oconto County as the jail administrator. (Docket #39 at 2, Kopp Aff.). As Jail Administrator, Ms. Kopp was tasked with supervising the operation of the Oconto County Jail, including the provision of access to medical care for jail inmates. (Docket #39 at 6). Ms. Kopp was also a designated records custodian for Oconto County Jail inmate medical records, but did not personally provide medical care to inmates. (Docket #39 at 6, 21).

Defendant Michael R. Jansen was, at all relevant times, the duly elected Sheriff of Oconto County, Wisconsin. (Docket #40 at 2). Defendant Jansen does not supervise the day-to-day operation of the Oconto County

---

[3]The Court notes that Wenzel failed to submit responses to the defendants' proposed finding of fact in violation of Civil L.R. 56(b)(2)(B). Civil L.R. 56(b)(4) provides that the Court "will deem uncontroverted statements of material fact admitted solely for purpose of deciding summary judgment." Wenzel verified his complaint, however, and the Court may consider it to the extent that Wenzel's allegations are based on personal knowledge. *See* 28 U.S.C. § 1746; Fed. R. Civ. P. 56(e); *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).

Jail, the provision of medical services to inmates, or the dispensing of medications to inmates housed in the Oconto County Jail. (Docket #40 at 4-5).

Defendant Oconto County is a county in northeastern Wisconsin. The Oconto County Jail is a facility that houses individuals who, among other things, are awaiting transfer to state facilities. (Docket #40 at 3). Oconto County contracts with CHC for the provision of inmate medical services. (Docket #40 at 6).

Wenzel was processed into the Oconto County Jail system on, May 1, 2014. (Docket #39 at 9). During the time of his stay at the Oconto County Jail, Plaintiff was housed in the "B" block of inmate cells. (Docket #39 at 25). A copy of the Oconto County Jail Inmate Informational Booklet is posted in each cellblock of the Oconto County Jail. (Docket #39 at 14). The Oconto County Jail Inmate Informational Booklet explains the Oconto County Jail policy for providing medical care to jail inmates. (Docket #39 at 17). It provides that jail inmates must complete "Medical Request" forms unless they are experiencing a medical emergency. (Docket #39 at 16). The Oconto County Jail Inmate Informational Booklet outlines how inmates may request medical care. (Docket #39 at 15).

Wenzel's complaint alleges that he first requested medical attention on May 4, 2014 (Docket #1 at 3), however there is no record of a medical request form submitted, as required by jail policy. Wenzel was provided a medical assessment on May 12, 2014. (Docket #46-1 at 2-4).[4] As part of the assessment, Defendant Nelson noted that Wenzel did not have any infectious

---

[4] The Court notes that the factual information contained in Wenzel's medical records (Docket #46-1) is, at times, incredibly difficult to read due to illegible handwriting. The Court uses its best judgment in recounting the information contained in these documents.

diseases, bruises, contusions, skin redness, soreness, or swelling. (Docket #46-1 at 2, 4). On May 28, 2014, Wenzel came to Defendant Nelson complaining of itchiness, and telling Defendant Nelson he thought he might have scabies. (Docket #46-1 at 9). Defendant Nelson noted some un-raised, non-draining, red spots, but did not notice any rash, burrowing or tunneling—the common signs of scabies. (Docket #46-1 at 9). Defendant Nelson provided Plaintiff with hydrocortisone cream, a treatment for skin inflammation, and aloe vera cream, commonly used to treat inflamed, burned, or dry skin. (Docket #46-1 at 9).

Wenzel next complained of a skin issue on June 4 and 8, 2014. (*See* Ex. 1 at 12, Docket #46-1). Defendant Nelson assessed Wenzel on June 8, 2014. (Ex. 1 at 11, Docket #46-1). Defendant Nelson noted some pinpoint red areas that she believed were caused by dry skin and/or scratching, and she placed Wenzel on the list to see the doctor on his next rounds. (Ex. 1 at 11, Docket #46-1).

Wenzel was seen by a Dr. Thomas Finnegan (not a defendant in this action) on June 11, 2014. ( Ex. 1 at 13, Docket #46-1). Dr. Finnegan noted a rash on Wenzel and noted that the hydrocortisone cream was "somewhat helpful." ( Ex. 1 at 11, Docket #46-1). Dr. Finnegan ordered hydroxyzine for Wenzel. ( Ex. 1 at 5, Docket #46-1).

Wenzel was seen again on June 22, 2014, at which time he reported to Defendant Nelson that the hydroxyzine had helped his rash. (Docket #46-1 at 14.) On June 26, 2014, Defendant Nelson noticed burrowing marks, a sign of scabies, under Plaintiff's skin. (Docket #46-1 at 14). Dr. Adeyemi Fatoki was notified of Wenzel's condition, assessed Wenzel the same day, and ordered that he be treated with Ivermectin, a front line anti-scabies drug. (Docket #46-1 at 15).

On July 6, 2014, Wenzel complained that his itchiness had not abated. (Docket #46-1 at 16). Defendant Nelson relayed Wenzel's complaints to Dr. Fatoki, who ordered another dose of Ivermectin and additional hydroxyzine for Wenzel. (Docket #46-1 at 7). As a precautionary measure to prevent further infection, Wenzel was transferred from his cell in B Block to a receiving cell, where he remained under quarantine for 5 days. (Docket #39 at 28).

After being seen on July 6, 2014, Wenzel did not fill out any more sick call sheets related to scabies, nor did Defendant Nelson note any additional complaints related to Wenzel's scabies after that date. (Docket #46 at 24). Plaintiff left the Oconto County Jail on August 22, 2014. (Docket #46-1 at 17). On Wenzel's health transfer form, Defendant Nelson noted that Plaintiff had been treated for scabies and that the scabies issue had been resolved. (Docket #46-1 at 17).

2. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

3. DISCUSSION

As discussed in detail below, the Court finds that there is no evidence in the record to support Wenzel's Eighth Amendment claims that the defendants acted with deliberate indifference to his serious medical needs. The Court begins its discussion with an overview of the legal standard for deliberate indifference.

3.1 Legal Standard—Deliberate Indifference

Wenzel alleges that the defendants acted with deliberate indifference to his medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) (holding that deliberate indifference to the serious medical needs of a prisoner may serve as the basis for a § 1983 claim). "The Eighth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects prisoners from prison conditions that cause the 'wanton and unnecessary infliction of pain,' including…grossly inadequate medical care." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)) (internal citations omitted). The prisoner has the burden "to demonstrate that prison

Page 7 of 15

Case 2:14-cv-01307-JPS   Filed 10/06/15   Page 7 of 15   Document 70

officials violated the Eighth Amendment, and that burden is a heavy one." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 325 (1986)).

To prove a claim of deliberate indifference to serious medical need, Wenzel must show: (1) an objectively serious medical condition; (2) that the defendants knew of the condition and were deliberately indifferent in treating him ; and (3) this indifference caused Wenzel some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Defendants argue that Wenzel cannot meet the second element (the subjective state-of-mind requirement) because none of the defendants were deliberately indifferent to his medical condition.

The deliberate-indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Gayton*, 593 F.3d at 620. Even if an official is aware of the risk to the inmate's health, "he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). Negligence cannot support a claim of deliberate indifference; nor is medical malpractice a constitutional violation. *Estelle*, 429 U.S. at 105-06; *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Barry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). The official must act with "a sufficiently culpable state of mind." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

When it comes to medical care in the prison setting, "prisoner[s] [are] not entitled to receive 'unqualified access to healthcare,'" *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)); instead, "prisoners are entitled only to 'adequate medical care,'" *id.* (quoting *Johnson*, 433 F.3d at 1013)). Adequate medical care may involve care that the prisoner disagrees with; this

disagreement alone is insufficient to establish an Eighth Amendment violation. *See Pyles*, 771 F.3d at 409. To establish deliberate indifference, the prisoner must demonstrate "that the treatment he received was 'blatantly inappropriate,'" *id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)); or, stated another way, that the treatment decision "represents so significant a departure from accepted professional standards or practices that it calls into question whether the [medical professional] was actually exercising his professional judgment," *id.* (citing *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) and *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)); *Gayton*, 593 F.3d at 622-23.

If the plaintiff fails to provide enough evidence to show deliberate indifference, and it cannot be inferred from the medical professional's treatment, "the deliberate indifference question may not go to the jury." *Gayton*, 593 F.3d at 620, 623.

3.2 Analysis

The Court finds as a matter of law that the defendants are entitled to summary judgment on the deliberate indifference claims against them. The parties do not quarrel over whether Wenzel suffered from a serious medical condition; the dispute instead concerns whether the defendants' actions permit an inference that they possessed the mental culpability required to be liable under the Eighth Amendment. As previously noted, Wenzel has failed to file a response to the defendants' proposed findings of fact, his own additional findings, and has failed to file an affidavit as evidence to support his claims. As a *pro se* litigant, the Court construes Wenzel's filings liberally, to give him every benefit of the doubt; however, even doing so, there is simply no evidence in the record to support a finding of deliberate

Page 9 of 15

Case 2:14-cv-01307-JPS   Filed 10/06/15   Page 9 of 15   Document 70

indifference in this case. The Court will now turns to separately analyze the claims against each defendant.

### 3.2.1 Defendant Nelson

The Court finds that Defendant Nelson is entitled to summary judgment because Wenzel has failed to put forth evidence establishing that she knew of a serious risk to Wenzel's health and consciously disregarded that risk. *See Holloway*, 700 F.3d at 1073. Wenzel's medical records establish that Defendant Nelson provided care to Plaintiff numerous times between May 28, 2014, and July 6, 2014, and that Wenzel was treated with at least five different medications for his condition. (Docket #46-1 at 5-9, 11, 13-16). To establish deliberate indifference, Wenzel must demonstrate "that the treatment he received was 'blatantly inappropriate,'" *Holloway*, 700 F.3d at 1073.

To begin, Wenzel's complaint alleges that he first requested medical assistance on May 4, 2014, and was ignored (Compl. at 3, Docket #1); however, Wenzel's medical records show no medical requests made during that time. Additionally, Wenzel seems to argue that Defendant Nelson improperly diagnosed him on May 28, 2014, by failing to treat him for scabies. (Compl. at 3, Docket #1). Wenzel's medical records indicate that Defendant Nelson provided Plaintiff with hydrocortisone cream and aloe vera cream, because she did not see any signs of scabies at the time. (Docket #46-1 at 9). Wenzel also alleges, without any support, that he "received improper treatment" after he was diagnosed with scabies on June 28, 2014. (Compl. at 4, Docket #1).

Defendant Nelson provided treatment to Wenzel shortly after he requested medical attention. She may indeed have mis-diagnosed his rash in failing to recognize scabies, and it may not have been the most appropriate

treatment; however, a prisoner is only entitled to reasonable measures to meet a substantial risk of serious harm. *Forbes*, 112 F.3d at 267. During Defendant Nelson's brief care of Wenzel, the Court cannot say that her treatment was so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment. *See Duckworth*, 532 F.3d at 679; *cf. Gil*, 381 F.3d at 663 & n.3 (finding deliberate indifference where the prison doctor prescribed a drug that worsened inmate's condition because the appropriate drug was not part of the BOP's formulary); *Greeno*, 414 F.3d at 654 (finding deliberate indifference where medical defendants would not alter Greeno's course of treatment over a two year period even though his condition was getting worse and he was vomiting on a regular basis and the defendants nevertheless persisted in a course of treatment known to be ineffective). Simply the fact that Wenzel believed he had scabies when initially treated by Defendant Nelson, and she disagreed, does not meet the standard for deliberate indifference. *See Pyles*, 771 F.3d at 409.

Defendant Nelson took measures to address Wenzel's skin condition, and, although the treatment may not have been immediately effective in treating Wenzel's scabies, the summary judgment record does not reveal that no minimally competent professional would have provided this regime of treatment. *See, e.g., Gayton v. McCoy*, 593 F.3d 610, 622-23 (7th Cir. 2010) (nurse was not deliberately indifferent to inmate's medical needs where she took reasonable measures to ensure that inmate would get medication). The undisputed facts show that Wenzel's scabies issue was in fact resolved by the time he left Oconto County Jail on August 22, 2014. (Docket #46-1 at 17). Without some evidence, such as expert opinion testimony, creating a reasonable inference that Defendant Nelson's treatment during this time frame was so inadequate that it demonstrated an absence of professional

judgment, Wenzel has failed to meet his "heavy" burden to establish that Defendant Nelson violated the Eighth Amendment. *See Pyles,* 771 F.3d at 408.

In light of the foregoing, the Court finds that no reasonable jury could find that Defendant Nelson's actions constituted deliberate indifference to Wenzel's serious medical need. Accordingly, the Court will grant Defendant Nelson's motion for summary judgment.

### 3.2.2 Defendants Jansen, Kopp and Dodge County Jail

The Court finds that Defendants Jansen, Kopp, and Dodge County Jail are entitled to summary judgment as a matter of law. To begin, the Court notes that Wenzel's complaint is devoid of any factual allegations against Defendants Jansen, Kopp, and Dodge County Jail other than simply being named as defendants. (Compl. at 2, Docket #1). For this reason alone, the Court recognizes that claims against Defendants Jansen, Kopp, and Dodge County Jail never should have passed beyond the screening stage as the complaint fails to state any claim against them.[5]

Defendants Jansen and Kopp held positions as the sheriff and jail administrator, respectively, and to the extent that Wenzel alleged supervisory liability against them, there is no viable claim. "The doctrine of respondeat superior does not apply to § 1983 actions.…" *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Therefore, for a supervisor to be liable under Section 1983, the supervisor "must be personally responsible for the deprivation of the constitutional right." *Matthews v. City of East St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012) (internal quotations and citations

---

[5] The Court notes that Wenzel makes various allegations against Defendants Kopp and Jansen in his opposition materials (Docket #51, #52), however, these documents are argument and not proper evidence for the Court to consider at the summary judgment stage.

omitted). To establish this type of personal involvement, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* (citing *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. Here, there are no facts in the record to establish Defendants Jansen's or Kopp's personal involvement or knowledge of the treatment Wenzel received. Moreover, as noted above, there is no underlying constitutional claim against Defendant Nelson in which Defendant Jansen or Kopp could have been aware of and ignored.

Finally, as to Defendant Oconto County Jail, there are two issues that warrant summary judgment: (1) "Oconto County Jail" is not a suable entity, separate from Oconto County, *see Grow v. City of Milwaukee*, 84 F. Supp.2d 990, 995-96 (E.D. Wis. 2000); and (2) even if the Court were to construe a claim against Oconto County, there are no facts available to support, nor does Wenzel even argue that a theory that the alleged deprivation of the plaintiff's constitutional rights was pursuant to a policy or custom in Oconto County.

Accordingly, the Court will grant Defendants Jansen's, Kopp's, and Dodge County Jail's motion for summary judgment.

> 3.3    The Court Declines to Exercise Supplemental Jurisdiction Over Wenzel's State Law Claim

The Court initially allowed the state law claim of medical malpractice to proceed against the defendants. (Docket #8 at 4). At this time, however, the Court declines to exercise supplemental jurisdiction over this claim. This is the proper course because Wenzel has no viable federal claims remaining and his state law claims were not the focus of the plaintiff's case; indeed,

Wenzel has never so much as mentioned a medical malpractice claim. *See Howlett v. Hack*, —F.3d—, 2015 WL 4433218, at *5 (7th Cir. July 21, 2015) ("This resolves all of Howlett's federal claims. What remain are his state-law [claims]. In a situation like this one, where the state-law claims have not been the focus of the litigation, the better practice is for the district court to relinquish its jurisdiction over them.") (citing 28 U.S.C. § 1367(c)(3) and *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007)); *Al's Serv. Ctr. v. BP Prods. N. Am.*, Inc., 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims."). As such, the Court will dismiss the medical malpractice claim against all the defendants, without prejudice.

4. CONCLUSION

In sum, the Court will grant summary judgment for all the defendants and finds that there is no evidence in the record that Defendants Nelson, Jansen, Kopp, and Dodge County Jail acted with deliberate indifference to Wenzel's serious medical need. Additionally, the Court declines to exercise supplemental jurisdiction over Wenzel's state law medical malpractice claim, and thus will also dismiss that claim without prejudice.

Accordingly,

IT IS ORDERED that the defendants' motions for summary judgment (Docket #37, #43) be and the same are hereby GRANTED, as more fully described in detail above, and that this action be and the same is hereby DISMISSED on the merits;

IT IS FURTHER ORDERED that the plaintiff's motions for summary judgment (Docket #51, #52) be and the same are hereby DENIED;

IT IS FURTHER ORDERED that the plaintiff's motions to amend the complaint (Docket #49, #63) be and the same are hereby DENIED;

IT IS FURTHER ORDERED that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket #50) be and the same is hereby DENIED as moot;

IT IS FURTHER ORDERED that the plaintiff's motion for additional discovery (Docket #54) be and the same is hereby DENIED as moot;

IT IS FURTHER ORDERED that the plaintiff's motions to add new evidence (Docket #65, #66) be and the same are hereby DENIED as untimely;

IT IS FURTHER ORDERED that the plaintiff's motion to change the trial date (Docket #67) be and the same is hereby DENIED as moot.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of October, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge